UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MUNEER TAWAM, REBEKA RODRIGUEZ, individually and on behalf of those similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>FELD ENTERTAINMENT INC., a Delaware corporation; and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No.: 23-cv-357-WQH-JLB<br><br>**ORDER** |

HAYES, Judge:

The matter before the Court is the Motion to Dismiss Plaintiffs' First Amended Complaint (ECF No. 13) filed by Defendant Feld Entertainment Inc.

**I.    PROCEDURAL BACKGROUND**

On January 1, 2023, Plaintiff Muneer Tawam initiated this action by filing a Complaint in the Superior Court for the State of California, County of San Diego (Case No. 37-2023-00003063-CU-CR-CTL). (*See* ECF No. 1-2.) On February 24, 2023, Defendant Feld Entertainment Inc. ("Defendant") removed the action to this Court. (ECF No. 1.) On April 16, 2023, Plaintiffs filed a First Amended Complaint ("FAC"), adding Rebeka Rodriguez as a named plaintiff. (ECF No. 11.) Plaintiffs' FAC alleges that Defendant violated the Video Privacy Protection Act of 1988 ("VPPA"), 18 U.S.C. §§

1

2710 *et seq.*, by knowingly disclosing Plaintiffs' personally identifiable information ("PII") and viewing activity to Facebook and Google when Plaintiffs watched videos on Defendant's website.

On May 1, 2023, Defendant filed the Motion to Dismiss Plaintiffs' FAC pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 13.) On May 22, 2023, Plaintiffs filed a Response in opposition to the Motion to Dismiss.[1] (ECF No. 14.) On May 26, 2023, Defendant filed a Reply. (ECF No. 15.)

## II. ALLEGATIONS IN THE FAC

Defendant "is a for-profit Delaware corporation" that "owns and promotes … monster truck events and rallies across the United States" and "owns, operates and/or controls" the monsterjam.com/en-US website (the "Website"). (ECF No. 11 ¶ 6.) "Part of Defendant's business involves increasing its brand presence via the use of videos" and "monetizing videos." *Id.* ¶¶ 15, 43. "Consistent with its business model, the … Website delivers embedded and hosted video content." *Id.* ¶ 15.

Defendant has integrated the "Facebook Tracking Pixel" into the Website, which tracks visitors to the Website and the types of actions they take, and "sends a record to Facebook." *Id.* ¶ 11. Specifically, when a visitor watches a video on the Website, the Website is configured to transmit the visitor's Facebook ID and event data—including webpage URLs, content categories, and video titles and other descriptors—to Facebook. "A Facebook ID is [PII]" because "[a]nyone can identify a Facebook profile—and all personal information publicly listed on that profile—by appending the Facebook ID to the end of Facebook.com." *Id.* ¶ 26. The information transmitted by the Website to Facebook "allow[s] Facebook to know, among other things, what video users of the … Website have watched" and is "sufficient to permit an ordinary person to identify a specific individual's

---

[1] Defendant filed a Declaration of E. Crystal Lopez in Support of the Motion to Dismiss, which attached a redline comparing Plaintiffs' Complaint and the FAC. Plaintiffs filed an Evidentiary Objection, arguing the declaration is impermissible extrinsic evidence. Plaintiffs' Evidentiary Objection is denied as moot because the Court did not consider the declaration in ruling on the Motion to Dismiss.

video viewing behavior." *Id.* ¶¶ 27-29. Defendant has configured Google Analytics on the Website to send similar data to Google whenever a video on the Website is played.

Plaintiff Tawam is an individual and consumer advocate who "visited Defendant's Website in January 2023 and played the video, 'WEEKEND RECAP: 2023 MONSTER JAM SEASON ROARS TO LIFE.'" *Id.* ¶ 4. Plaintiff Tawam "has a Facebook account" and "had his PII and video viewing behavior disclosed by Defendant to Facebook." *Id.* ¶ 31. Plaintiff Rodriguez is an individual and consumer advocate who "visited Defendant's Website in March 2023 and played the video, 'Monster Jam- BKT Behind the Wheel.'" *Id.* ¶ 5. Plaintiff Rodriguez "uses a Google browser" and "had her video viewing behavior disclosed by Defendant to Google." *Id.* ¶ 42. "Plaintiffs also signed up for Defendant's email list serve after viewing the videos on the Website." *Id.* ¶ 46. Plaintiffs "did not provide Defendant with any form of consent—either written or otherwise—to disclose their PII to third parties." *Id.* ¶ 65.

Plaintiffs bring one claim against Defendant for the knowing disclosure of Plaintiffs' PII in violation of the VPPA. Plaintiffs seek to represent a class of individuals whose PII was similarly disclosed, and request declaratory and injunctive relief, monetary damages, interest, and costs and attorneys' fees.

### III. CONTENTIONS

Defendant contends that Plaintiffs' allegations do not satisfy the statutory requirements of the VPPA. First, Defendant contends that Plaintiffs fail to plausibly allege that Defendant is a "video tape service provider" under the VPPA because Defendant is not in the business of providing video content, and the "short," free clips on its promotional Website fall outside the statute's scope. (ECF No. 13-1 at 22.) Second, Defendant contends that Plaintiffs fail to plausibly allege that Plaintiffs are "subscribers" and thus "consumers" under the VPPA because neither watching a free video nor signing up for a free e-mail list or newsletter is sufficient to make an individual a "consumer." *Id.* at 14. Third, Defendant contends that Plaintiffs fail to plausibly allege that Defendant knowingly disclosed Plaintiffs' PII. Defendant contends that even if the FAC otherwise states a claim for relief,

"Plaintiffs' VPPA claim fails because Plaintiffs consented to the sharing of their information when they visited the Website." *Id.* at 13. Defendant further contends that "Plaintiffs' construction of the VPPA is so impermissibly broad as to render the statute unconstitutional." *Id.* at 24.

Plaintiffs contend that "numerous federal courts have interpreted the term, video tape service provider, as including commercial website owners/operators" and that Defendant is "engaged in the business of delivering computer files containing video content, which are similar audio visual materials to prerecorded cassette tapes." (ECF No. 14 at 11 (internal quotations omitted).) Plaintiffs contend that the allegation that "Plaintiffs… signed up for Defendant's email list serve after viewing the videos on the Website … suffices to make Plaintiffs subscribers of services from a video tape service provider." *Id.* at 12 (internal quotations omitted). Plaintiffs contend that they sufficiently alleged Defendant knowingly disclosed Plaintiffs' PII to Facebook and Google because "the FAC alleges that by embedding the Facebook Tracking Pixel's code onto its Website, Defendant compels a user's browser to send numerous cookies to Facebook" containing the user's Facebook ID. *Id.* at 22. Plaintiffs contend that even if the Defendant's Website had a consent requirement, the "disclosure does not put a reasonable consumer on notice that the consumer's video watching history or behavior shall be disclosed to a third party such as Facebook or Google Analytics." *Id.* at 27-28. Plaintiffs contend that Defendant's constitutional challenge to Plaintiffs' construction of the VPPA is without merit because the VPPA satisfies the four-part test set forth by the U.S. Supreme Court to survive intermediate scrutiny.

## IV.   LEGAL STANDARD

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In order to state a claim for relief, a pleading "must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Dismissal under Rule 12(b)(6) "is proper only where there is no cognizable legal theory or an absence of

sufficient facts alleged to support a cognizable legal theory." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* However, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (alteration in original) (quoting Fed. R. Civ. P. 8(a)). A court is not "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). "In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009). Nevertheless, a court "must accept all material allegations in the complaint as true and construe them in the light most favorable to [plaintiff]." *NL Industries, Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986).

## V. DISCUSSION

The VPPA provides: "A video tape service provider who knowingly discloses, to any person, personally identifiable information concerning any consumer of such provider shall be liable to the aggrieved person." 18 U.S.C. § 2710(b)(1). "[I]n order to plead a plausible claim under section 2710(b)(1), a plaintiff must allege that (1) a defendant is a 'video tape service provider,' (2) the defendant disclosed 'personally identifiable information concerning any customer' to 'any person,' (3) the disclosure was made knowingly, and (4) the disclosure was not authorized by section 2710(b)(2).'" *Mollett v.*

1  *Netflix, Inc.*, 795 F.3d 1062, 1066 (9th Cir. 2015) (quoting *id.*). Further, a plaintiff must
2  allege that he is a consumer within the meaning of the VPPA. *See* 18 U.S.C. § 2710.

3      Defendant first disputes that it is a "video tape service provider" subject to the
4  statute. "[T]he term 'video tape service provider' means any person, engaged in the
5  business, in or affecting interstate or foreign commerce, of rental, sale, or delivery of
6  prerecorded video cassette tapes or similar audio visual materials." 18 U.S.C. § 2710(a)(4).
7  Defendant contends that it is not "engaged in the business" of delivering video content
8  because it does not charge visitors to view the content or otherwise sell the content, and
9  because the dissemination of the videos at issue is not a core function of the Website.
10 Defendants further contend that the content at issue does not constitute "video cassette
11 tapes or similar audio visual materials." Plaintiffs contend that the term "video tape service
12 provider" encompasses commercial website owners and operators like Defendant and that
13 the videos at issue fall within the definition of "similar audio visual materials."

14     The requirement that a defendant be "engaged in the business … of rental, sale, or
15 delivery" of video content is typically straightforward to apply in cases in which the
16 defendant directly rents or sells video content or access to such content over the internet.
17 *See, e.g., Cappello v. Walmart, Inc.*, No. 18-CV-06678-RS, 2019 WL 11687705, at *2
18 (N.D. Cal. Apr. 5, 2019) (permitting claim against Walmart, a business that sold video
19 media products through its website); *Cantu v. Tapestry, Inc.*, No. 22-cv-1974-BAS-DDL,
20 2023 WL 4440662, at *8 (S.D. Cal. July 10, 2023) (explaining that the type of sale at issue
21 in *Cappello* is directly analogous to the conduct motivating the passage of the VPPA);
22 *Ambrose v. Bos. Globe Media Partners LLC*, No. 21-10810-RGS, 2022 WL 4329373, at
23 *1-2 (D. Mass. Sept. 19, 2022) (permitting claim against the Boston Globe because it
24 provided "hundreds, if not thousands, of videos" to users through its website in exchange
25 for a paid digital subscription); *Czarnionka v. Epoch Times Ass'n, Inc.*, No. 22 Civ. 6348
26 (AKH), 2022 WL 17069810, at *4 (S.D.N.Y. Nov. 17, 2022) (same, for the Epoch Times).

27     However, the "engaged in the business" requirement is more difficult to apply in
28 cases, such as this one, where the defendant is only alleged to have "deliver[ed]" the video

content at issue. In recognition that the dictionary definition of the term "business" connotes "a particular field of endeavor," several district courts in this Circuit have required that the delivery of video content be "a focus of the defendant's work"—i.e., that the defendant's product or service be "substantially involved in the conveyance of video content" and "significantly tailored to serve that purpose." *In re Vizio, Inc., Consumer Privacy Litig.*, 238 F. Supp. 3d 1204, 1221 (C.D. Cal. 2017) (quotation omitted) (permitting claim against television company that designed smart televisions to stream video content through its applications, and advertised and charged consumers a premium for this functionality); *see also Cantu*, 2023 WL 4440662, at *8 (rejecting claim against fashion brand that was based on a bare allegation that the brand "monetize[ed] instances in which consumers watch[ed] videos" on its website); *Carroll v. Gen. Mills, Inc.*, No. CV 23-1746 DSF (MRWx), 2023 WL 4361093, at *3 (C.D. Cal. June 26, 2023) (rejecting claim against food manufacturing company that "provide[d] videos [on its websites] as a peripheral part of its marketing strategy"); *In re Facebook, Inc., Consumer Privacy User Profile Litig.*, 402 F. Supp. 3d 767, 799 (N.D. Cal. 2019) (permitting claim against social media company that "regularly deliver[ed]" cached video content to its users). This requirement, that a defendant's product or service be more than "peripherally or passively involved in the delivery of video content," *In re Vizio*, 238 F. Supp. 3d 1222, is also compatible with the other cases cited in the parties' briefing. *See, e.g., Lebakken v. WebMD, LLC*, No. 1:22-CV-644-TWT, 2022 WL 16716151, at *1, *3 n.2 (N.D. Ga. Nov. 4, 2022) (permitting claim against company that distributed email newsletter "frequently" containing video content); *Louth v. NFL Enters. LLC*, No. 1:21-cv-00405-MSM-PAS, 2022 WL 4130866, at *1, *4 (D.R.I. Sept. 12, 2022) (permitting claim against application operated by the National Football League that disseminated "live local and primetime games, exciting videos and highlights, and replays of every game").

In this case, the FAC alleges that Defendant "is a for-profit Delaware corporation" that "owns and promotes … monster truck events and rallies across the United States." (ECF No. 11 ¶ 6.) The FAC further alleges that Plaintiffs viewed two videos on

Defendant's website and that "[p]art of Defendant's business involves increasing its brand presence via the use of videos" and "monetizing videos." *Id.* ¶¶ 15, 43. Like the complaints in *Cantu* and *Carroll*, the allegations in the FAC concerning the volume and role of the video content at issue in this case do not support an inference that the videos viewed by Plaintiffs are more than peripheral to Defendant's business or that Defendant's website is significantly tailored to the purpose of conveying those videos. The Court concludes that the FAC fails to state a claim for relief under the VPPA because it does not plausibly allege that Defendant is a "video tape service provider."

Defendant next disputes that Plaintiffs are "consumers" who qualify for protection under the statute. "[T]he term 'consumer' means any renter, purchaser, or subscriber of goods or services from a video tape service provider[.]" 18 U.S.C. § 2710(a)(1). Defendant contends that Plaintiffs' allegations that they viewed videos for free on Defendant's Website and separately signed up for Defendant's email mailing list do not qualify Plaintiffs as consumers. Plaintiffs contend these allegations support Plaintiff's subscriber status and suffice to qualify Plaintiffs as consumers.

While Plaintiffs allegedly signed up for Defendant's email mailing list, not everything that can conceivably be labeled a "subscription" automatically triggers the protections of the VPPA. In recognition that the VPPA "allows consumer to maintain control over personal information divulged and generated in exchange for receiving services from video tape service providers," S. Rep. No. 100–599 at 8 (1988), a number of courts have held that the "subscription" must involve "some type of commitment, relationship, or association … between a person and an entity," even if payment is not a required factor. *Ellis v. Cartoon Network, Inc.*, 803 F.3d 1251, 1256 (11th Cir. 2015); *see also Yershov v. Gannett Satellite Info. Net., Inc.*, 820 F.3d 482, 488 (1st Cir. 2016) (disagreeing with the holding in *Ellis* that an individual who signed up for a free application was not a subscriber but acknowledging that a "subscription" requires some relationship with the defendant "materially different from what would have been the case" had the plaintiff not signed up.) Courts have further required the existence of a factual nexus or

relationship between the subscription provided by the defendant and the defendant's allegedly actionable video content. *See, e.g., Gardener v. MeTV*, No. 22 CV 5963, 2023 WL 4365901, at *4 (N.D. Ill. July 6, 2023) ("The Court does not agree, however, with Plaintiffs' argument that the allegations that [they] opened an account separate and apart from viewing video content on MeTV's website is sufficient to render them 'subscribers' under the Act."); *Carter v. Scripps Networks, LLC*, No. 22-cv-2031, 2023 WL 3061858, at *6 (S.D.N.Y. Apr. 24, 2023) (stating that "a customer's non-video transactions play no part in a defendant's liability under the VPPA" and holding that plaintiffs' subscription to a defendant's newsletter did not enable the plaintiffs to sue regarding videos on the defendant's website where the complaint did not allege that the plaintiffs' "status as newsletter subscribers was a condition to accessing the site's videos, or that it enhanced or in any way affected their viewing experience.").

The FAC alleges that Plaintiffs signed up for an email mailing list provided by Defendant and separately viewed videos on Defendant's website. These allegations are not sufficient to plausibly support the existence of a nexus between the alleged subscription and the video content at issue. The additional allegation that Plaintiffs only signed up for the email mailing list "after viewing the videos" (ECF No. 11 ¶ 46), further undermines any inference of a subscriber relationship at the time Plaintiffs viewed the videos. The Court concludes the allegations in the FAC fail to support a plausible inference that Plaintiffs are "subscriber[s] of goods or services," 18 U.S.C. § 2710(a)(1), and thus consumers within the meaning of the VPPA.[2]

## VI.   CONCLUSION

IT IS HEREBY ORDERED that Defendant's Motion to Dismiss the First Amended Complaint (ECF No. 13) is granted. The First Amended Complaint is dismissed without

---

[2] The Court declines to address the other arguments raised in Defendant's Motion to Dismiss. The Court denies the parties' respective requests for judicial notice as moot because those requests relate to exhibits not at issue in this Order.

prejudice. No later than thirty (30) days from the date of this Order, Plaintiffs may file a motion for leave to amend the First Amended Complaint, accompanied by a proposed second amended complaint. If no motion is filed, the Court will close this case.

Dated: July 28, 2023

*William Q. Hayes* (signature)
Hon. William Q. Hayes
United States District Court